UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAXIMA C. RODRIGUEZ, ET AL.,

        Plaintiffs,

   v.

SERVICE EMPLOYEES INTERNATIONAL, ET AL.,

      Defendants.

_____/

No. C-10-01377 JCS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION (FRCP 12(b)(1)) AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(b)(6)), AND IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT (FRCP 12(e)) [Docket No. 56]**

## I.     INTRODUCTION

Plaintiffs in this action are union members who assert claims under the Labor Management Relations Disclosure Act ("LMRDA") based on alleged impropriety by Defendant Service Employees International Union Local 87 ("Local 87") and several individual officers of the Local 87 in connection with ratification of a collective bargaining agreement. The parties have consented to the jurisdiction of a magistrate judge, pursuant to 28 U.S.C. § 636(c). Defendant Local 87 brings a Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction (FRCP12(b)(1)) and Failure to State a Claim upon Which Relief Can Be Granted (FRCP 12(b)(6)), and in the Alternative, Motion for a More Definite Statement (FRCP 12(e)) (hereinafter, "Motion" or "Motion to Dismiss"). The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). Accordingly, the motion hearing scheduled for December 3, 2010 is **vacated.** The cases management conference scheduled for the same date at 9:30 a.m. shall be **moved to the afternoon calendar, at 1:30 p.m.** For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

**United States District Court**
For the Northern District of California

## II.     BACKGROUND

### A.     Procedural Background

In their original complaint, filed April 1, 2010, Plaintiffs asserted claims under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.*, against Local 87, several individual officers of Local 87 and the Service Employees International Union ("the International Union"). The International Union filed a motion to dismiss [docket no. 23], which was withdrawn after Plaintiffs voluntarily dismissed their claims against it. The Local 87 and individual officers also filed a motion to dismiss [docket no. 22], as well as a motion for sanctions.

On August 16, 2010, Plaintiffs filed a First Amended Complaint. In response, the Local 87 and individual officers withdrew their motion to dismiss. They did not, however, withdraw the sanctions motion, arguing in their reply brief that the First Amended Complaint, like the original complaint, asserts baseless claims against them. The Court denied the sanctions motion without prejudice on the basis that it was premature [docket no. 54]. Subsequently, Defendant Local 87 – the only remaining defendant in the First Amended Complaint – brought the instant Motion to Dismiss [docket no. 56].

### B.     First Amended Complaint

Plaintiffs allege that they are members of Local 87. First Amended Complaint ("FAC"), ¶¶ 1-6. Local 87 is a labor organization representing employees engaged in janitorial work in San Francisco's high rise buildings. *Id.*, ¶ 11. In October 2008, Local 87 entered into a collective bargaining agreement ("CBA") with the San Francisco Maintenance Contractors Association ("SFMCA"). *Id.*, ¶¶ 22-23. The effective date of the CBA was November 24, 2008 and it is to expire on July 31, 2012. *Id.*, ¶ 23. A vote on the CBA by Local 87 members took place on October 25, 2008. *Id.*

Plaintiffs allege in the FAC that numerous improprieties occurred in connection with the vote on the CBA, and that union officers Olga Miranda, Ahmed Abozayd and Hung Chi Szeto "engaged in intimidation, misinformation, lack of information, stuffing of ballots and conspiracy to ratify the new CBA." *Id.*, ¶ 24. In particular, Plaintiffs allege the following wrongful conduct:

- prior to the vote, the Union leadership intentionally "control[led] the dissemination of information and participation" by informing only members who supported the CBA of its contents while purposely failing to provide copies of the CBA and denying Spanish language copies of the CBA to Plaintiffs because they were perceived to oppose it. *Id.*, ¶¶ 25-29.

- no real effort was made to inform members that a ratification vote was to be held on October 25, 2008 and there was a clear effort *not* to inform members who were perceived as opposing the CBA of the vote; as a result, many members, including Plaintiff Suarez, did not know the vote was going to occur and only 20% of the membership appeared for the vote. *Id.*, ¶ ¶ 30, 41.

- the ratification vote required the membership to choose "between a 'Yes' vote or a 'No' vote that also meant a strike [whereas] [i]t should have been a choice between 'Yes' to the contract and 'No' only." *Id.*, ¶ 31. This was allegedly intended to mislead the membership and deprived members of the opportunity to vote against the CBA. *Id.*

- Plaintiffs and other witnesses saw ballot boxes being stuffed, with some people who voted on October 25, 2008 being given more than one ballot, leading them to believe that these individuals voted twice. *Id.*, ¶ 32.

- At the October 25, 2008 ratification vote, Plaintiffs and others who wished to asked questions about the CBA were not given an opportunity to do so; those who were perceived to be opposed were not given a microphone or were removed from the proceedings. *Id.*, ¶ 33. For example, Plaintiff Rodriguez was physically removed from the assembly and therefore was not given the opportunity to vote. *Id.*, ¶ 34. Plaintiffs Azevedo, Martinez and Garcia did not vote because they had not received sufficient information about the CBA to make a meaningful choice. *Id.*, ¶¶ 35-36, 38.

- Plaintiff Loaiza, a member of the Local 87, went to vote but was told she could not enter the proceedings because she was not in "good standing" and did not have a California ID. *Id.*, ¶ 37.

According to Plaintiffs, the Local 87 executed the CBA despite knowledge of these improprieties. *Id.*, ¶ 40. As a result of the CBA, Plaintiffs' healthcare coverage and benefits have been affected. *Id.*, ¶ 42. After the CBA was ratified, Plaintiffs continued to request copies of the CBA in Spanish but Local 87 "decided not to immediately make Spanish language versions of the new CBA [available] in its continued attempt to misinform and provide less information to certain members of the local union." *Id.*, ¶ 44. In contrast, Plaintiffs allege, "[a]ll prior CBA's were immediately available in several languages after their ratification." *Id.*

On May 18, 2009, Plaintiffs filed a request to have their grievances exhausted by an internal procedure. *Id.*, ¶ 45. Plaintiffs requested that union officials Olga Miranda, Ahmed Abozayd and Hung Chi Szeto be removed from office and that a new ratification vote be held on the CBA. *Id.*, ¶ 45. Proceedings were held on June 11, 2009, July 15, 2009, August 6, 2009 and August 26, 2009.

*Id.*, ¶ 46.  Despite Plaintiffs' repeated requests for a decision, the executive board did not publish a written decision until June 2010, after Plaintiff filed their original complaint in this action.  *Id.*  The decision denied Plaintiffs' claims and found no wrongdoing on the part of the union officers.  *Id.*

Plaintiffs allege that they have been subjected to various forms of retaliation for their actions relating to the ratification of the CBA.  *Id.*, ¶¶ 47-49.  For example, at a November 14, 2009 meeting of Local 87, members allegedly were told that dues would be increased because Plaintiffs' actions had given rise to a "financial deficit."  *Id.*, ¶ 47.  In addition, Plaintiff Loaiza allegedly lost the job that she had held since 1991 due to retaliation for Plaintiffs' actions.  *Id.*, ¶ 48.  Plaintiffs further allege that Plaintiff Loaiza has been subject to intimidation by union members loyal to Olga Miranda and that between June 2009 and August 2010, she has been yelled at and physically threatened by members of Local 87 acting on behalf of Olga Miranda.  *Id.*, ¶ 49.  In addition, allegedly Olga Miranda has been falsely stating to union members that Plaintiffs are seeking compensation from Local 87 in the amount of $250,000.00 each.  *Id.*, ¶ 49.

On the basis of these factual allegations, Plaintiffs allege that Defendant has denied them the following rights: 1) "equal rights and privileges . . .to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws," in violation of 29 U.S.C. §§ 411(a)(1); and  2) the right of all union members to "meet and assemble freely with other members . . . and to express at meetings of the labor organization his views . . .upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings," in violation of  29 U.S.C. § 411(a)(2).  Plaintiffs further cite to 29 U.S.C. § 412, which permits individuals whose rights have been infringed to bring an enforcement action for appropriate relief, including injunction.  Finally, Plaintiffs invoke 29 U.S.C. § 529, which makes it illegal for a union to discipline a member for exercising rights protected under 29 U.S.C. §§  401 *et seq.*, and 29 U.S.C. § 530, which makes it unlawful for any person, through force or threat of force, to "intimidate any

4

1    member of a labor organization for the purpose of interfering with or preventing the exercise of any

2    right to which he is entitled under the provisions of" 29 U.S.C. §§ 401 *et seq.*

3         In their prayer for relief, Plaintiffs ask the Court to invalidate the collective bargaining

4    agreement and schedule a new ratification vote, and to remove Miranda, Szeto and Abozayd from

5    their offices with the Local 87.

6         **C.**     **The Motion**

7         In the Motion, Defendant asserts that Plaintiffs' First Amended Complaint is so vague as to

8    which statutory provisions are being invoked and what facts support each claim that it fails to meet

9    even the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Motion at

10    1.  Further, Defendant contends, Plaintiffs' allegations are so conclusory that the complaint does not

11    meet the "facial plausibility" requirement set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544, 570

12    (2007) ("a complaint must contain . . . sufficient factual matter accepted as true to 'state a claim to

13    relief that is plausible on its face'").  *Id.*

14         Defendant further asserts that Plaintiffs fail to state a claim under Rule 12(b)(6) of the

15    Federal Rules of Civil Procedure as to any of the LMRDA provisions cited in the First Amended

16    Complaint for the following reasons:

17    •    <u>29 U.S.C. § 411(a)(1)</u>: According to Defendant, this provision guarantees equal protection to union members as to rights afforded by the LMRDA, but requires that a plaintiff must be a

18        member of a cognizable class.  Here, it is unclear what defines the group, Defendant argues. To the extent that it those who opposed the CBA, either before or after the ratification vote,

19        Defendant argues that such a group is not specific and identifiable and therefore cannot bring a claim under this provision, citing *Aulson v. Blanchard*, 83 F.3d 1, 3-7 (1st Cir. 1996)

20        (holding that under 42 U.S.C. § 1985(3), plaintiffs failed to state equal protection claim where the group allegedly discriminated against was an "ad hoc opposition group").  *Id.* at 3-

21        5.

22    •    <u>29 U.S.C. § 411(a)(2)</u>: Defendant asserts that Plaintiffs fail to state a claim under this provision, which guarantees the right of union members to meet and assemble freely, subject

23        to the reasonable rules of the union, because this provision does not create a statutory right to vote on a contract proposal or guarantee that union members be provided a "meaningful

24        vote." *Id.* at 10 (citing *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1473 (9th Cir. 1992)).  Nor does it require that unions provide rank and file members the same

25        information possessed by union leaders with respect to contract negotiations, Defendant argues. *Id.* at 11.  Defendant also asserts that this provision does not requires the union to

26        give members the choice of accepting or rejecting the CBA (independent of making a decision on whether to strike) but rather, permits the union to decide what question should be

27        on the ballot. *Id.* at 12 (citing *Ackley*).  Further, to the extent that Plaintiffs' complaint

28

1  alleges that some plaintiffs were denied the right to enter the assembly or were removed from
2  the proceedings, these allegations are insufficient to state a claim, Defendant contends,
   because no facts have been alleged showing that the Union's conduct was not based on
3  reasonable rules. *Id.* at 12-13. Next, there is no right to receive a copy of the CBA before a
   ratification vote, whether in Spanish or in English, and therefore the allegation that the union
4  failed to provide copy of the CBA in Spanish before the vote occurred does not state a claim
   under this provision.[1] *Id.* at 13-14. Nor, Defendant asserts, do Plaintiffs have a right to
5  receive a copy of the CBA "immediately after" the ratification vote to the extent Plaintiffs
   are alleging that the union failed to provide a copy of the CBA after the ratification vote but
6  before the execution of the CBA. *Id.* at 14.

7  •   29 U.S.C. § 529:  This provision makes it unlawful for a union to "fine, suspend, expel, or
       otherwise discipline any of its members for exercising any right to which he is entitled
8      under" the LMRDA.  Defendant asserts that "discipline" under this provision refers only to
       punishment that is authorized by the union as a collective entity to enforce its rules and
9      which affect a union member's rights or status as a member of the union.  According to
       Defendant, Plaintiffs have alleged no facts showing that they were disciplined for their
10     actions in any way by the union. *Id.* at 15. Nor do allegations that Olga Miranda told
       members that Plaintiffs were seeking $250,000.00 each or that members were told their dues
11     would increase as a result of Plaintiffs' action constitute "discipline" as these acts were not
       alleged to have been official acts taken by the union as a collective entity. *Id.* at 15-16
12     (citing *Breininger v. Sheet Metal Wokers Intern. Ass'n Local Union No. 6*, 493 U.S. 67, 91-
       92 (1989); *Finnegan v. Leu*, 456 U.S. 431, 437-438 (1982); *Yerdon v. Teamsters Local 1149
13     at al.*, 886 F. Supp. 226, 231 (N.D.N.Y. 1995), *aff'd* 91 F.3d 370; *Kirk v. Transport Workers
       Union of America, AFL-CIO*, 934 F. Supp. 775, 785  (S.D. Tex. 1995)).

14 •   29 U.S.C. § 530:  This provision establishes criminal penalties for violence or threats of
       violence against union members in order to prevent them from exercising their rights under
15     the LMRDA.  Defendant argues that Plaintiffs' claims fail to the extent they are based on this
       provision because it does not give rise to a private cause of action. *Id.* at 16 (citing *Moore v.
16     Local 569 of Intern. Broth. of Elec. Workers*, 653 F.2d 767, 775 (9th Cir. 1987)).

17     Defendant also argues that the remedy requested by Plaintiffs in their prayer for relief– that

18 Miranda, Szeto and Abozayd be removed from office, that the CBA be invalidated and a new

19 ratification vote be held – are not available under the LRMDA.  *Id.* at 17.  They point to authority

20 holding that a union's failure to abide by its own rules is not a sufficient basis for invalidating a

21 collective bargaining agreement.  *Id.* (citing *Goclowski v. Penn Cent. Transp. Co.*, 571 F.2d 747,

22 760 (3d Cir. 1997).  Defendant also argues that this remedy is unavailable because the employers

23 who entered into the CBA are not parties to this action and have no obligation to investigate whether

24 the union had authority to bind its members when it entered into the CBA.  *Id.* (citing *Battle v. Clark*

25

26 ─────────────────────

27      [1]Defendant concedes, however, that 29 U.S.C. § 414 requires the union to provide members who
   request it a copy of the collective bargaining agreement *after* it has been ratified.

28

*Equipment Co.*, 579 F.2d 1338, 1349 (7th Cir. 1978), *overruled on other grounds by Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685 (7th Cir. 1982)).

Finally, while acknowledging that a federal court generally is not deprived of subject matter jurisdiction simply on the basis that a plaintiff fails to state a claim under a federal statute, Defendant asserts that there is an exception to that rule where the complaint is to "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit" as to not involve a federal controversy. *Id*. at 18-19 (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89-90 (1998)). Defendant contends that this exception applies here and therefore, that Plaintiff's First Amended Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Id*. at 19.

**D.      Plaintiffs' Opposition**

In their Opposition, Plaintiffs repeat the allegations of the complaint. They go on to assert that their allegations show that they were "discriminated against in being able to vote," "denied the right to meet and assemble freely with other members during the ratification vote [and] den[ied] . . .the right to express any views, arguments or opinions about the new CBA during the ratification vote. Opposition at 12. Plaintiffs argue that these allegations are sufficient to state a claim under the broad standard articulated in *Lodge 1380 v. Dennis*, 625 F.2d 819 (9th Cir. 1980). Plaintiffs also point to the extensive testimony developed in the internal union proceeding, arguing that this evidence further supports their position that the case should be allowed to move forward.

**E.      Defendant's Reply**

In its Reply brief, Defendant contends that Plaintiffs have failed to address the specific deficiencies identified in the Motion. Reply at 4. In addition, Defendant argues that as a result of elections that were held on September 30, 2010 (after the Motion was filed), in which Miranda, Abozayd and Szeto were reelected to their position, Plaintiffs' complaint is now moot. *Id*. at 3-4 (citing *Canez v. Guerrero*, 707 F.2d 443, 446 (9th Cir. 1983)). Finally, Defendant cites additional cases in support of its position that the LMRDA affords union members no right to vote or express their opinions on collective bargaining agreements. *Id*. at 5 (citing *Confederated Independent*

United States District Court

For the Northern District of California

1   *Unions v. Rockwell-Standard Co.*, 465 F.2d 1137 (3d Cir. 1972); *White v. White Rose Food*, 237

2   F.3d 174, 182 (2d Cir. 2001); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654,666 (7th Cir.

3   1992); and *Wiggins v. United Food and Commercial Workers Union, Local 56*, 420 F. Supp. 2d

4   357).

5   **III.    ANALYSIS**

6      **A.    Legal Standard**

7         **1.    Rule 12(b)(1)**

8         Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*, 511

9   U.S. 375, 377 (1994).  Their authority extends only to subject matter authorized by the Constitution

10  or by statute.  *Id.*  The burden of establishing subject-matter jurisdiction is on the party asserting

11  jurisdiction.  *See id.*  A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure will be

12  granted if the complaint fails to allege grounds for federal subject-matter jurisdiction, as required by

13  rule 8(a) of the Federal Rules of Civil Procedure.  *See Warren v. Fox Family Worldwide*, 328 F.3d

14  1136, 1139 (9th Cir. 2003).  However, "jurisdictional dismissals in cases premised on

15  federal-question jurisdiction are exceptional" and are permitted only when the claim is "patently

16  without merit."  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

17        **2.    Rule 12(b)(6)**

18        A complaint may be dismissed for failure to state a claim for which relief can be granted

19  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose

20  of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star

21  Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the

22  pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

23  pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

24  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

25        In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

26  "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-

27  moving party."  *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 127 S. Ct. 1955, 1969 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*. at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. at 1964. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 1974. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1965 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

### B.      The LMRDA

Plaintiffs assert claims under Title I of the LMRDA, "which provides union members with an exhaustive 'Bill of Rights' enforceable in federal courts." *Local No. 82 v. Crowley*, 467 U.S. 526, 536 (1984) (citing LMRDA §§ 101-105, 29 U.S. §§ 411-415). "Title I is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id*. at 536-537. Section 101(a)(1) is an anti-discrimination provision, providing as follows:

(a)(1) Equal rights

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). In *Calhoon v. Harvey*, the Supreme Court held that "this is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." 379 U.S. 134, 139 (1964); *see also Ackley v. Western Conference of Teamsters*,

958 F.2d 1463, 1472 (9th Cir. 1992) ("Section 101(a)(1) is an anti-discrimination provision pure and simple.  To state a claim under Section 101(a)(1), a union member must allege a denial of rights accorded to other members").

In addition, Title I guarantees the right to freedom of speech and assembly, as follows:

2) Freedom of speech and assembly

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligation.

29 U.S.C. § 411(a)(2).  "The courts of appeal have construed section 101(a)(2) to provide a remedy not only for direct reprisals against dissenters, but also for union conduct that inhibits or threatens dissenting speech." *Ackley*, 958 F.2d at 1475 (citing *Lodge 1380 v. Dennis*, 625 F.2d 819, 827 (9th Cir. 1992)).  To prevail under this provision, a plaintiff need not establish discrimination.  *Lodge*, 625 F.2d at 825 n. 7.

Enforcement of these provisions is governed by Section 102, which provides, in part, as follows:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.

29 U.S.C. § 412.  In *Crowley*, the Supreme Court noted that while Section 102, standing by itself, suggests "that individual union members may properly maintain a Title I suit whenever rights guaranteed by that Title have been violated," the use of the words "appropriate relief" in Section 102 explicitly limit the relief that the district court may order.  467 U.S. at 538.  The Court explained that the enforcement and remedial provision of Title I should not be interpreted in isolation but rather, should be understood with reference to Title IV of the LMRDA.  *Id.* at 539.  "Title IV . . .provides an elaborate postelection procedure aimed solely at protecting union democracy through free and democratic elections, with primary responsibility for enforcement lodged with the Secretary of

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Labor." *Id.* at 528.   Thus, challenges to union elections that have already been conducted fall under

2   Title IV's exclusivity provision, 29 U.S.C. § 483, which provides that "[t]he remedy provided by

3   [Title IV] for challenging an election already conducted shall be exclusive."  On the other hand,

4   "[e]xisting rights and remedies to enforce the constitution and bylaws of a labor organization with

5   respect to elections *prior to the conduct thereof* shall not be affected by the provisions of [Title IV]."

6   *Id.*  Finally, in *Crowley* the Court addressed the jurisdiction of courts under Title I as to claims

7   brought *in the course* of a union election, holding that "[i]ndividual union members may properly

8   allege violations of Title I that are easily remediable under that Title without substantially delaying

9   or invalidating an ongoing election" but that "Congress did not consider court supervision of union

10   elections to be an 'appropriate' remedy for a Title I suit filed during the course of a union election."

11   467 U.S. at 546.

**C.      Whether Plaintiffs' Claim Under 29 U.S.C. § 411(a)(1) Fails Because Plaintiffs
          Are Not Members of a Cognizable Group**

14       Defendant asserts that Plaintiffs fail to state a claim under § 411(a)(1) because this section is,

15   in essence, an equal protection claim, which requires that a plaintiff asserting discrimination must be

16   a member of a cognizable class.  In support of its position Defendant cites a single case, *Aulson v.*

17   *Blanchard*, 83 F.3d 1, 3-7 (1st Cir. 1996).  The Court rejects Defendant's position because *Aulson*

18   involved an equal protection challenge under 42 U.S.C. § 1985 and there is no authority to support

19   Defendant's contention that the civil rights law that was applied in that case is applicable under Title

20   I of the LMRDA.  To the contrary, cases that address § 411(a)(1) indicate that under that provision,

21   a plaintiff need not demonstrate membership in a cognizable class.

22       In *Aulson*, the plaintiff was a town selectman who alleged that he was a member of a political

23   group who opposed members of an incumbent group of "old guard" politicians and that this "old

24   guard" conspired against him in a variety of ways, including orchestrating illegal searches and sham

25   prosecutions against him.  83 F.3d at 2.  The plaintiff sued these individuals under 42 U.S.C. §

26   1985(3), which proscribes certain types of conspiracies to deprive a person of equal protection of the

27   law.  *Id.*  The court dismissed the claim under Rule 12(b)(6) for failure to state a claim, citing the

28

United States District Court

For the Northern District of California

"gloss" placed on claims under § 1985(c) by the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), namely, that the alleged denial of equal protection that is the subject of the conspiracy must be "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id*. That requirement, the court held, "loom[ed] as an insurmountable obstacle to the plaintiff's attempted embrace of § 1985(3)" because the plaintiff was required to show that the discrimination was a result of his membership in a *cognizable* class.  *Id*.  The court expressed skepticism as to whether a political group could ever constitute a cognizable class but held that even if it could, the plaintiff's allegations with respect to his membership in a group who opposed the old guard was too indeterminate to show a cognizable class.  *Id*. at 5.

Defendant seeks to apply the holding of *Aulson* in this case based on the assertion that both involve "equal protection" claims.  It fails to cite any authority, however, showing that membership in a cognizable class is required to state a claim under § 411(a)(1).  Further, discussions of the legislative history strongly support the conclusion that Congress did not intend to impose such a requirement.  In *Finnegan v. Leu*, the Supreme Court described the origins of the LMRDA as follows:

> The Labor-Management Reporting and Disclosure Act of 1959 was the product of congressional concern with widespread abuses of power by union leadership. The relevant provisions of the Act had a history tracing back more than two decades in the evolution of the statutes relating to labor unions. Tensions between union leaders and the rank-and-file members and allegations of union wrongdoing led to extended congressional inquiry. As originally introduced, the legislation focused on disclosure requirements and the regulation of union trusteeships and elections. However, various amendments were adopted, all aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution; not surprisingly, these amendments-ultimately enacted as Title I of the Act, 29 U.S.C. §§ 411-415-were introduced under the title of "Bill of Rights of Members of Labor Organizations." . . . The amendments placed emphasis on the rights of union members to freedom of expression without fear of sanctions by the union, which in many instances could mean loss of union membership and in turn loss of livelihood. Such protection was necessary to further the Act's primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships. See 105 Cong.Rec. 6471-6472, 6476, 15530 (1959), 2 Leg.Hist. 1098-1099, 1103, 1566.

456 U.S. 431, 435 (1982).  The history of Title I makes clear that it was intended to protect the rights of union members to express opposition without fear of reprisals from union leadership.  Were courts to apply to § 411(a)(1) the requirement that discrimination must be based on racial or

United States District Court

For the Northern District of California

1    other class-based animus, they would essentially eviscerate the protection afforded by this

2    provision.[2]  In the absence of any authority suggesting that the discrimination that is prohibited

3    under § 411(a)(1) must be based on membership in a cognizable class, the Court rejects Defendant's

4    argument that Plaintiffs fail to state a claim as to this provision because they are not members of

5    such a class.

6    **D.      Whether Plaintiffs' Claim Under 29 U.S.C. § 411(a)(2) Fails Under *Ackley***

7        Defendant asserts that Plaintiffs' complaint fails to state a claim under § 411(a)(2), citing the

8    Ninth Circuit's holding in *Ackley* that the LMRDA does not create a right to vote on a contract

9    proposal and does not require that union members be given "meaningful" information prior to voting

10   on contract ratification.  The Court concludes that Defendant is correct that many of the allegations

11   in Plaintiffs' complaint fail to state a claim under § 411(a)(2) in light of *Ackley*.  However, the Court

12   concludes that some of the allegations in Plaintiffs' complaint fall outside of the *Ackley* holding and

13   therefore, may not be dismissed under that case.

14       In *Ackley*, two union members sued the union under 29 U.S.C. § 411(a), claiming that the

15   union's failure to disclose material changes in a negotiated collective bargaining agreement prior to

16   the ratification vote violated the equal voting rights and freedoms of § 411(a).  958 F.2d at 1468.

17   The evidence showed that while there had been no discrimination with respect to the amount of

18   information provided to union members prior to the ratification vote, the summary of the collective

19   bargaining agreement that was read to the membership failed to disclose some material changes in

20   _____

21       [2]The Court notes that in *Ackley*, discussed further below, the Ninth Circuit repeatedly
     emphasized that the plaintiff's claims, which alleged violations of § 411(a)(1) and (2) based on failure
22   to provide rank and file members of the union with adequate information about a collective bargaining
     agreement that was subject to a ratification vote, were not based on allegations that they had been
23   discriminated against.  958 F.2d at 1473 ("the union treated all members identically during the
     ratification process"; "the local union leaders furnished the same type and amount of information to all
24   of the [members] and accorded them identical rights to speak at the ratification meetings").  Thus, the
     court implicitly acknowledged that had the union withheld information related to the collective
25   bargaining agreement selectively based on opposition to the union leadership's position, they would
     have stated a claim under § 411(a)(1).  *Id.*; *see also O'Connor v. Local 719*, 739 F. Supp. 1158, 1161
26   (N.D. Ill. 1990) ("[t]he only allegation in the complaint which could conceivably support a § 411 claim
     is the plaintiff's charge that union officials selectively notified only those union members who supported
27   ratification").

28                                                           13

the collective bargaining agreement. *Id.* at 1468.  The plaintiffs initially sought rescission of the collective bargaining agreement and an injunction regarding the conduct of future ratification votes but later abandoned their claim to rescission in favor of a request for declaratory judgment. *Id.*  The district court dismissed the plaintiff's claims after a bench trial and the plaintiffs appealed. *Id.*

The court of appeals held that because there was no evidence of discrimination, the plaintiffs' claims failed under § 411(a)(1). *Id.*  The court reasoned that although union members were not given the same information as was available to the union leaders who were negotiating the agreement, all rank-and-file members were given the same information and the same right to speak. *Id.* at 1473-1474.  The court rejected the plaintiffs' assertion that the union had violated § 411(a)() by presenting the agreement to the membership in the most favorable light, stating that "section 101(a)(1) prohibits discrimination against people, not ideas." *Id.* at 1474.

The court went on to address the right to freedom of expression under § 411(a)(2).  The court held that even though unions may be required to provide sufficient information to allow members to exercise a *statutory* right to vote to do so in a meaningful way, for instance, in the case of union elections, that requirement does not extend to voting as to which members do not have a statutory right to vote, such as the ratification of collective bargaining agreements. *Id.* at 1475.  The court concluded,

> it is the breach of the union's internal rules that must serve as the basis for any complaint that insufficient information was provided to the membership prior to or at the time of ratification of a contract.  Section 101(a) of the LMRDA affords no remedy for such a breach.

*Id.* at 1476.  The Court noted, however, that § 411(a)(2) has been construed broadly "to provide a remedy not only for direct reprisals against dissenters, but also for union conduct that inhibits or threatens dissenting speech. *Id.* at 1475 (citing *Lodge*, 625 F.2d at 827).  It made clear that its holding rested in part on the fact that there was no evidence of such conduct:

> [Plaintiffs] have made no showing that they or any of their fellow union members were denied the opportunity to express their views about the proposed collective bargaining agreement, or discouraged from asking questions about its provisions during the ratification meetings.

*Id.*

14

United States District Court

For the Northern District of California

Finally, having concluded that the plaintiffs' claims under the LMRDA failed, the court explained that its decision did "not leave union members without rights in contract ratification cases, nor does it deprive them of a federal remedy for a union's failure to abide by the rules governing the ratification process." *Id.* at 1476. The court continued,

> If the union's constitution or bylaws affords members the right to ratify a labor-management contract-and almost all do-that right is protected by federal law. However, the federal law that applies is of a different character than the LMRDA. Section 301(a) of the LMRA authorizes the federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization ... or between any such labor organizations." 29 U.S.C. § 185(a) (1988). A union constitution is considered a contract between the union and its members, and a member or members may sue the union under section 301(a) for breach of that contract. *Wooddell v. International Bhd. of Elec. Workers*, 502 U.S. 93, 112 S.Ct. 494, 499, 116 L.Ed.2d 419 (1991); *United Ass'n of Journeymen v. Local 334*, 452 U.S. 615, 619-27, 101 S.Ct. 2546, 2549-53, 69 L.Ed.2d 280 (1981); *Kinney v. International Bhd. of Elec. Workers*, 669 F.2d 1222, 1229 (9th Cir.1981). Unless union members allege a denial or infringement of a specific right provided them in the LMRDA, it is this federal statutory remedy that they must pursue when they contend that rights guaranteed them by their union's constitution or bylaws have been infringed.

*Id.* at 1477.

*Ackley* teaches that much of the conduct alleged by Plaintiffs in this action falls outside the ambit of § 411(a)(2). In particular, allegations that the union leadership did not provide adequate information for its members to make an informed decision, did not adequately publicize the place and time of the ratification vote and framed the choice in a manner that discouraged members from opposing ratification are not actionable under § 411(a)(2). On the other hand, to the extent that Plaintiffs seek to assert a claim under this section based on allegations that the union leadership intentionally and selectively  prevented certain union members, on the basis of their opposition to the collective bargaining agreement, from expressing their opinions during the ratification process and threatened or retaliated against them for continuing to speak out against the collective bargaining agreement, Plaintiffs' allegations may be sufficient to state a claim under this provision. *See Schermerhorn v. Hall*, 1995 WL 608304 (S..D.N.Y., August 17, 1995 (holding that union had violate § 411(a)(2) and awarding declaratory relief, attorneys' fees and nominal damages where jury found that union officials had retaliated against members as part of scheme to suppress speech in connection with ratification vote by bringing disciplinary charges against them and by taking other

15

actions that were aimed at suppressing speech, including posting notices cancelling a special meeting that plaintiffs called in accordance with union rules).

### E.        Whether Plaintiffs State a Claim Pursuant to 29 U.S.C. § 529

Defendant argues that the conduct alleged in Plaintiffs' complaint fails to state a claim under 29 U.S.C. § 529 because that section applies only to punishment that is authorized by the union to enforce its rules.  The Court agrees.

Section 529 provides, in relevant part, as follows:

> It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter.

29 U.S.C. § 529.  In using the term "otherwise discipline," "Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA but meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 91 (1989).  Plaintiffs have alleged no such conduct in this case.

### F.        Whether Plaintiffs State a Claim Pursuant to 29 U.S.C. § 530

Defendant argues that Plaintiffs also fail to state a claim under 29 U.S.C. § 530, and the Court agrees.  Section 530 provides as follows:

> It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this chapter. Any person who willfully violates this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

29 U.S.C. § 530.  Section 530 does not give rise to a private cause of action.  *Moore v. Local 569 of Intern. Broth. of Elec. Workers*,  653 F.Supp. 767, 774-775 (S.D.Cal.,1987).  Therefore, Plaintiffs fail to state a claim under this provision.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

### G.    Whether Plaintiffs' Claims Fail Because Allegations in the FAC Are Otherwise Insufficient

Because the Court finds, for the reasons stated above, that Plaintiffs may have viable claims under § 411(a) and(2), it rejects Defendant's assertion that the complaint should be dismissed under Rule 12(b)(1), for lack of subject matter jurisdiction, on the basis that it is "wholly insubstantial and frivolous."  Nonetheless, many of Plaintiffs' factual allegations do not support claims under these provisions because they are too conclusory and/or fail to allege key elements.  Below, the Court addresses the sufficiency of Plaintiffs' allegations as to each form of misconduct alleged in the FAC.

<u>Withholding of information prior to vote</u>: In ¶¶ 25-29 of the FAC, Plaintiffs allege that the Union leadership intentionally "control[led] the dissemination of information and participation" by informing only members who supported the CBA of its contents while purposely failing to provide copies of the CBA and denying Spanish language copies of the CBA to Plaintiffs because they were perceived to oppose it.  As discussed above, the union is not required to ensure that members are fully informed about the contents of a collective bargaining agreement so long as all members are treated equally.  Nor is the union required to provide copies to its members of a collective bargaining agreement before it has been ratified.[3]  Similarly, the allegation that the union failed to provide a Spanish language version prior to the vote does not, by itself, support a claim under the LMRDA because Plaintiffs do not allege that copies were provided to members in any other language . However, to the extent that Plaintiffs allege that they were *selectively* denied information on the basis that they opposed to the collective bargaining agreement and that members who supported the collective bargaining agreement were given more information about its contents, Plaintiffs state a claim for discrimination under § 411(a)(1).

<u>Failure to publicize ratification vote</u>:   In ¶¶ 30 and 41 of the FAC Plaintiffs allege that  no real effort was made to inform members that a ratification vote was to be held on October 25, 2008

---

[3]Under the LMRDA, unions are required to provide their members with copies of a collective bargaining agreement once it has been signed. 29 U.S.C. § 414; *see also Summerville v. Local 77*, 369 F.Supp.2d 648, 658-659 (M.D.N.C.,2005).

United States District Court

For the Northern District of California

and there was a clear effort *not* to inform members who were perceived as opposing the CBA of the vote; as a result, many members, including Plaintiff Suarez, did not know the vote was going to occur and only 20% of the membership appeared for the vote.  Under *Ackley*, the LMRDA does not impose a requirement that the union publicize a ratification vote in any particular manner, even if union rules might contain such a requirement.  Thus, this allegation could only potentially state a discrimination claim under § 411(a)(1) on the basis of the allegation that there was an effort *not* to inform those who opposed the collective bargaining agreement.  However, Plaintiffs fail to directly allege that other union members were provided more information than they were; nor do they allege any specific facts showing that they were singled out in any particular way with respect to the information provided.   Therefore, the Court concludes that these allegations are insufficient to support claims under either § 411(a)(1) or (2).

Choice offered on ratification: Plaintiffs allege in ¶ 31 of the FAC that the ratification vote required the membership to choose "between a 'Yes' vote or a 'No' vote that also meant a strike [whereas] [i]t should have been a choice between 'Yes' to the contract and 'No' only." *Id*., ¶ 31. This was allegedly intended to mislead the membership and deprived members of the opportunity to vote against the CBA.  In *Ackley*, the Ninth Circuit held that a similar claim failed under both § 411(a)(1) and § 411(a)(2).  These allegations fail to state an LMRDA claim.

Stuffing of ballot boxes:  Plaintiffs allege in ¶ 32 of the FAC that they witnessed ballot boxes being stuffed, with some people who voted on October 25, 2008 being given more than one ballot, leading them to believe that these individuals voted twice.  Allowing some members to vote twice while allowing Plaintiffs to vote only once amounts to discrimination and therefore states a claim under § 411(a)(1).  *See Kapau v. Yamamoto*, 622 F.2d 449, 456 (9th Cir. 1980) (holding that union decision after election that one of the candidates was ineligible was discriminatory because it was akin to stuffing the ballot box), *reversed, in part, on other grounds in Crowley*, 467 U.S. at 536.

Conduct Related to October 25, 2008 Ratification Vote: In ¶¶ 33-38 of the First Amended Complaint, Plaintiffs allege that they and others who wished to asked questions about the CBA were not given an opportunity to do so and that those who were perceived to be opposed were not given a

microphone or were removed from the proceedings. *Id.*, ¶ 33.  For example, Plaintiff Rodriguez was physically removed from the assembly and therefore was not given the opportunity to vote. *Id.*, ¶ 34. Plaintiffs Azevedo, Martinez and Garcia did not vote because they had not received sufficient information about the CBA to make a meaningful choice. *Id.*, ¶¶ 35-36, 38.  As discussed above, in *Ackley* the Ninth Circuit acknowledged that § 411(a)(2) provides a remedy for "union conduct that inhibits or threatens dissenting speech" and noted that in that case, the plaintiffs' claims failed, in part, because the plaintiffs "made no showing that they or any of their fellow union members were denied the opportunity to express their views about the proposed collective bargaining agreement, or discouraged from asking questions during the ratification meetings."  958 F.2d 1463.  To the extent that Plaintiffs here allege that they *were* denied the opportunity to express their views because they opposed the collective bargaining agreement, they have stated a claim under § 411(a)(2).  However, the  allegation that some of the plaintiffs were unable to make a meaningful choice because of insufficient information fails to state a claim under § 411(a)(2) in light of *Ackley*.

> Retaliation After Collective Bargaining Agreement Was Ratified: Plaintiffs allege in ¶¶ 47-49 of the FAC that they have been subjected to various forms of retaliation for their actions relating to the ratification of the CBA. As noted above, § 411(a)(2) prohibits reprisals against dissenting speech.  *See Lodge*, 625 F.2d at 827; *see also Cotter v. Owens*, 753 F.2d 223, 229 (2d Cir. 1985) (holding that a union member may establish a violation of 29 U.S.C. § 411(a)(2) even based on an otherwise lawful act by a union official if the complained of act was "part of a series of oppressive acts by the union leadership that directly threatens the freedom of members to speak out").   To the extent that Plaintiffs allege that the union has retaliated against them for opposing the collective bargaining agreement and for pursuing internal remedies and then litigation to protect their rights, Plaintiffs state a claim under § 411(a)(2).  The Court notes, however, that the allegation that Plaintiff Loaiza lost her job due to retaliation is too conclusory to support a claim under the LMRDA because Plaintiffs have alleged no facts relating to Ms. Loaiza's employment that would an inference to be drawn linking her expression of dissident speech with respect to the collective bargaining agreement to the loss of employment.

**H.     Whether Plaintiffs' Complaint Should be Dismissed Because Requested Relief is Unavailable**

Defendant contends that Plaintiffs' complaint should be dismissed, in its entirety, because Plaintiffs seek relief that is not available under the LMRDA, namely, an injunction invalidating the collective bargaining agreement and scheduling a new election, as well as removing certain union officials from office.  The Court concludes that Defendant is correct that the Court may not invalidate the collective bargaining agreement, at least under the facts alleged here.  However, the Court rejects Defendant's assertion that Plaintiffs' complaint should be dismissed, in its entirety, because no relief is available.

**1.     Whether the Court Has Authority Under the LMRDA to Invalidate Collective Bargaining Agreement**

The district court's jurisdiction under the LMRDA is set forth in 29 U.S.C. § 412, which provides as follows:

> Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

28 U.S.C. § 412.  As discussed above, Courts have found that this provision must be construed in light of Title IV, which preempts the district court's authority with respect to actions that challenge union elections in cases where the challenge is brought after the election has occurred.  Defendant does not contend that the Court's authority is preempted under Title IV and the Court agrees.  The ratification vote that Plaintiffs challenge here is not an election for the selection of union officers and therefore is outside of the purview of Title IV.  Instead, Defendant cites two cases that involve section 301 of the NLRA, prohibiting unfair labor practices, including unfair representation in connection with collective bargaining agreements.  *See* Motion at 17-18 (citing *Goclowski v. Penn Cent. Transp. Co.*, 571 F.2d 747, 760 (3d Cir. 1977); *Battle v. Clark Equipment Co.*, 579 F.2d 1338, 1349 (7th Cir. 1978)).

**United States District Court**
For the Northern District of California

In *Goclowski*, plaintiffs were railroad employees who sued the union under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, and the employer on a breach of contract theory claiming that an agreement negotiated by the union that deprived the plaintiffs of their seniority was unauthorized because it was not properly ratified by the union membership.  571 F.2d at 751-752.  The plaintiffs sought damages and to invalidate the agreement based, in part, on the fact that it was not properly ratified by the affected union members.  *Id.* at 753 n. 2.  The court held that it had jurisdiction to address the invalidation claim because it did not require the interpretation of a collective bargaining agreement but rather, involved "a simple contractual principle attacking the formation of a contract" and therefore was not subject to binding interpretation by the Railroad Adjustment Board.  *Id.* at 755.

The court in *Goclowski* went on to address whether the agreement could be invalidated on the basis of the union's failure to obtain ratification by its members.  *Id.* at 756.  The court acknowledged that "[i]t is a basic principle of labor law that the employer is required to deal and enter into contracts with the duly designated bargaining representatives of its employees," noting that under the Railway Labor Act, "[t]he duly designated representative of railroad employees has statutory authority . . . to make agreements binding upon them with respect to wages, rules, and other working conditions." *Id.* at 759 (citations omitted).  Because of this principle, the court explained, courts have held that "the unilateral failure of a union to follow its own rules was an insufficient basis to invalidate the agreement entered into by the union with the employer." *Id.* at 759 (citing *Kline v. Florida Airlines, Inc.*, 496 F.2d 919 (5th Cir. 1974).  The court found, however, that there was evidence from which a reasonable inference could be drawn that the employer had knowledge that the union entered into the agreement without authority. *Id.*  Accordingly, the court held that there was a "substantial factual question . . . as to whether the agreement itself [was] invalid for failure to obtain ratification." *Id.*.

In *Battle*, as in *Goclowski*, plaintiffs were union employees who challenged an agreement between the union and their employer on the basis that the union did not obtain proper ratification of the agreement by union members. 579 F.2d 1338, 1340-1342.  The plaintiffs sued the union for

United States District Court

For the Northern District of California

breach of the duty of fair representation under the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185(a), and the employer for breach of contract. *Id*.  The district court found that the claim

against the union failed on summary judgment because the plaintiffs failed to exhaust their internal

remedies, as required under the LMRA, and because there was no evidence that the union engaged

in any bad faith conduct.  *Id*, at 1342.  It then addressed whether the employer could be held liable

for monetary damages on the theory that the employer acquiesced in wrongdoing on the part of the

union in obtaining ratification signatures, including providing inadequate information about the

agreement, ruling out of order and threatening to remove members who sought to speak out against

it at a union meeting, and obtaining signatures from members through fraudulent means.  *Id*. at 1348.

 The court concluded that although there were fact questions as to whether the union engaged in

misconduct, the employer was, nonetheless, entitled to summary judgment because there was no

evidence that the employer's reliance on the union's authority was not in good faith.  *Id*.  at 1349.

The court reasoned, "[w]e do not believe that in enacting Section 301(a) Congress intended to

permit the awarding of retroactive monetary relief against an employer whose only fault has been to

rely in good faith on the representations of the union leaders that the union membership had properly

ratified the [agreement]."  *Id*.

　　　*Goclowski* and *Battle* stand for the proposition that under federal labor law, consistent with

widely accepted common law principles of contract and agency, an agreement entered into by a

union on behalf of its members will be valid and binding so long as the employer reasonably

believes that the union is authorized to enter into such an agreement.  Here, there are no allegations

that the employers who entered into the collective bargaining agreement with Local 87 acted in bad

faith in relying on the union's apparent authority to enter into the collective bargaining agreement.

Indeed, the employers are not named as defendants in this action.  In the absence of any allegation

that the employers were aware of the alleged defects in the ratification process, there are no claims

in Plaintiffs' complaint that could give rise to an order invalidating the collective bargaining

agreement.  In reaching this conclusion, the Court is cognizant of the fact that neither of the cases

cited by Defendant involves a request for injunctive relief invalidating a collective bargaining

United States District Court

For the Northern District of California

1   agreement under the LMRDA, leaving open the possibility that under § 412, broader injunctive

2   relief might be available than is available under the labor laws at issue in *Battle* and *Goclowski*.  The

3   Court has found no authority suggesting, however, that in enacting the LMRDA Congress intended

4   to afford remedies that go beyond those available under common law and established federal labor

5   law with respect to the invalidation of a collective bargaining agreement.  Therefore, the Court

6   concludes that under the facts alleged in the First Amended Complaint, the remedy requested by

7   Plaintiffs as to the invalidation of the collective bargaining agreement and scheduling of a new

8   ratification vote is not available.

9

10          **2.          Whether the Action Should be Dismissed on the Basis that None of the
                          Remedies Requested by Plaintiffs are Available**

11          Although the Court finds that invalidation of the collective bargaining agreement is not an

12  available remedy in this case, it rejects Defendant's assertion that the complaint should be dismissed

13  in its entirety on the basis that no relief sought by Plaintiffs is available.  First, Defendant has not

14  established as a matter of law that Plaintiffs' request for removal of certain union officers from their

15  positions is unavailable.  Second, the Court concludes that it is not required to dismiss Plaintiffs

16  complaint on the basis of the relief sought in it so long as some relief can be granted.

17          **a.          Removal of Union Officers**

18          Although Defendant states in a caption of the Motion that the Court does not have authority

19  under the LMRDA to remove elected union officers from their positions, Defendant does not

20  address that issue in the body of its argument.  *See* Motion at 17-18.  Rather, the argument in that

21  section is confined to the question of whether the Court has the authority to invalidate the collective

22  bargaining agreement in this case. The only argument Defendant makes as to the removal of the

23  officers is found in the Reply brief, in which Defendant asserts that the request for the officers'

24  removal is moot because they were recently reelected and therefore, the Court can grant no effective

25  relief.  The Court is not persuaded by Defendant's argument.

26          In support of its assertion that the request for removal is moot, Defendant cites *Canez v.*

27  *Guerrero*, 707 F.2d 443, 446 (9th Cir. 1983).  In *Canez*, the Ninth Circuit addressed whether an

28                                                        23

appeal relating to injunctions issued by the district court under the LMRDA in connection with union elections was rendered moot because the elections had already occurred.  707 F.3d at 446. The court found that it was because the injunctions that were challenged had been entered to protect the right to freedom of expression of a dissident group and because the appellants who challenged the injunctions had prevailed over the dissidents in the election. *Id.*  The court of appeals reasoned that because the terms of the injunctions were limited to the elections that had already occurred and did not apply to future elections, no further relief was available to the appellants.  *Id*.  The court further noted that the circumstances of the case did not fall within the exception to the mootness doctrine for harms that are capable of repetition but evading review, rejecting the assertion that it should decide the appeal on the merits because otherwise dissident groups would be more likely to seek injunction relief under the LMRDA to delay union elections.  *Id*.

*Canez* is not on point.  Plaintiffs in this case object to actions that they say gave rise to ratification of a collective bargaining agreement that has affected their benefits and to ongoing retaliation on the part of certain union officers.  To the extent that the removal of an elected union officer is an available remedy under the LMRDA – a question that neither party has briefed – the election that occurred in October 2010 does not have any bearing on Plaintiffs' requested relief, which is not based on a theory that these officers hold their positions by virtue of some previous, tainted election.  Further, the Court notes that in *Canez*, the court's holding was based, in large part, on the fact that the party that challenged the injunctions had prevailed in the election despite the injunctions.

In contrast, in *Ackley* the court of appeals *rejected* the union's argument that the appeal was moot because the plaintiff's had abandoned their rescission claim.  958 F.2d at 1468.  The court explained that the plaintiffs' claims were capable of repetition but evaded review because "when procedural wrongs involving the ratification process are alleged . . .[t]he relevant time period to be considered . . .is the duration of the ratification process itself."  *Id*.  Because that time period is only a few months, the court held, it is too short to allow for judicial review.  *Id*.  Further, because it was likely that future ratification votes would be conducted in the same manner, the challenges raised

24

1    were not moot.  *Id.*  Finally, the court noted that in order to demonstrate the a case is moot, the

2    burden is on the *defendant* to show that the alleged wrong will not recur.  *Id.*

3              The Court concludes that Plaintiffs' claims are not moot.

4                          **b.    Whether Dismissal is Appropriate Because Relief Sought by**

5                                 **Plaintiffs is Unavailable**

6              Defendant argues that none of the remedies requested by Plaintiffs are available under the

7    LMRDA, implying that the Court should dismiss Plaintiffs' claims on this basis.  Defendant does

8    not, however, cite authority addressing whether it is appropriate to dismiss a complaint under Rule

9    12(b)(6) on the basis that the remedies sought in it are unavailable.  The Court concludes that it is

10   not, so long as some relief is available.  In *Massey v. Banning Unified School Dist.*, 256 F.Supp.2d

11   1090, 1092 (C.D.Cal., 2003), the court explained:

12              a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to
              which he or she is not entitled." William W Schwarzer, et al., Civil Procedure Before Trial §
13           9:230. "It need not appear that plaintiff can obtain the specific relief demanded as long as the
              court can ascertain from the face of the complaint that some relief can be granted." *Doe v.*
14           *United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also Doss v. South*
              *Central Bell Telephone Co.*, 834 F.2d 421, 425 (5th Cir.1987) (demand for improper remedy
15           not fatal if claim shows plaintiff entitled to different form of relief).

16   *Id.*  Here, Defendant has not shown that Plaintiffs could not be afforded some form of relief, even if

17   the specific relief requested in the FAC is not available.  Therefore, the Court declines to dismiss

18   Plaintiffs' FAC on the basis of the remedies requested in it.

19            **I.    Motion for More Definite Statement under Rule 12(e)**

20            Defendant asserts that even if the Court denies the motion to dismiss under Rule 12(b)(6), it

21   should order Plaintiffs to provide a more definite statement under Rule 12(e) to clarify the factual

22   basis for each claim asserted in the FAC.  Pursuant to Rule 12(e), "[a] party may move for a more

23   definite statement of a pleading ... which is so vague or ambiguous that the party cannot reasonably

24   prepare a response."  That standard is not met here.  Therefore, Defendant's request is DENIED.

25   **IV.    CONCLUSION**

26            The Motion is GRANTED in part and DENIED in part as follows:

27   •     Plaintiffs' claims under § 411(a)(1) and (2) are dismissed under Rule 12(b)(6), consistent

28                                                    25

with the discussion in Subsection G of this Order, to the extent that they are based on allegations that do not support those claims.

• Plaintiffs' claims under 29 U.S.C. §§ 529 & 530 are dismissed under Rule 12(b)(6) for failure to state a claim.

• Defendant's request for dismissal of Plaintiffs' FAC for lack of jurisdiction under Rule 12(b)(1) is DENIED.

• Defendant's request for a more definite statement under Rule 12(e) is DENIED.

IT IS SO ORDERED.

Dated:  November 23, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

26